**CRAWFORD ·BRINGSLID·**
**VANDER NEUT, LLP**
900 South Avenue, Suite 204
Staten Island, New York 10314
(718) 273-9414 (phone)
(718) 273-9414 (facsimile)
acrawford@cbvlaw.com
*Attorneys for Plaintiff*
DATAMAXX APPLIED TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-------------------------------------------------------------------X
DATAMAXX APPLIED TECHNOLOGIES, INC.

                     Plaintiffs,                              **COMPLAINT**

      -against-                                     Case No:

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, and WILLIAM J.
BRATTON, as Commissioner of the New York
City Police Department,

                         Defendants.
-------------------------------------------------------------------X

        Plaintiff, Datamaxx Applied Technologies, Inc. by and through its attorneys, Crawford · Bringslid · Vander Neut, LLP, and as and for its complaint as against the City of New York, New City York Police Department ("NYPD") and William J. Bratton, as Commissioner of the New York City Police Department ("Bratton") (collectively "Defendants"), hereby alleges as follows:

## THE PARTIES

        1.      Plaintiff Datamaxx Applied Technologies, Inc. ("Datamaxx" or "Plaintiff") is a foreign corporation organized and existing pursuant to the laws of the State of Florida, with its principal place of business located at 2001 Drayton Drive, Tallahassee, Florida 32311.

2.      Defendant City of New York ("NYC") is a municipality organized and existing pursuant to the laws of the City and State of New York.

3.      Defendant New York City Police Department ("NYPD") is an officially designated department of the City of New York organized and existing pursuant to the Laws of the City and State of New York.

4.      Defendant William J. Bratton ("Bratton") is the Commissioner of NYPD.


## JURISDICTION

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §1332 in that the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between the Plaintiff and the Defendants.

6.      The District Court for the Southern District of New York is the proper venue for this matter as Defendants all have offices with a designated address located within New York County.


## FACTS COMMON TO ALL CAUSES OF ACTION

7.      Datamaxx is a premier provider of advanced communications, data access, information sharing, enterprise intelligence, and access control solutions to the law enforcement, criminal justice, public safety, and security industries.

8.      Datamaxx and NYPD entered into a contractual working relationship from 1999-2016 pursuant to which, at NYPD's direction, Datamaxx provided NYPD with software, licenses, a variety of professional services and air time for multiple projects and fulfilling a variety of functions.

2

9.    Notably, throughout the course of this sixteen-plus-years working relationship, NYPD was often severely delinquent in remitting payment for services and products rendered by Datamaxx.   Ultimately, regardless of how delinquent, NYPD consistently rendered payment for goods provided and services rendered.

10.    By way of example, NYPD once delayed over two years in remitting payment to Datamaxx for products and services rendered.

11.    In light of the foregoing payment history, it was standard procedure for Datamaxx to wait extended periods for payment from NYPD, due to the protracted period of time involved in developing contract documentation through the final stage of contract registration.

12.    Relevant to this action, NYPD executed a contract with Northrup Grumman ("NGIT") pursuant to a project known as the Automated Forms Project ("Forms Project").

13.    Thereafter, NGIT executed a subcontract with Datamaxx to design and implement specific portions of the Forms Project for use by NYPD.

14.    Upon information and belief, the Forms Project was slated to include three forms under the NGIT Forms Project contract with NYPD, including, the Accident Report Form ("Accident Report").

15.    Upon information and belief, Accident Report was slated to be a uniform system for the reporting and warehousing of information surrounding roadway accidents.

16.    During the term of, and following the expiration of its subcontract, at the specific insistence and request of NYPD, Datamaxx delivered design services, staged and implemented hardware platforms, and simultaneously conducted workflow meetings with NYPD vis-a-vis various aspects of the Forms Project.  Datamaxx also completed all required specifications for

the data and visual elements of one portion of the Forms Project, and delivered all training services attendant with same.

17.      In or around March of 2011, NYPD assigned Chief Ruben Beltran to the Forms Project and in or around January of 2012, NYPD assigned Ken Clark as the Forms Project Manager.

18.      During the aforementioned time period, upon information and belief, Accident Report was not a priority aspect of the Forms Project.

19.      Upon information and belief, Datamaxx delivered everything that was required under the Forms Project subcontract with NGIT.

20.      Thereafter, in or around March of 2013, after the expiration of the Forms Project subcontract with NGIT, NYPD re-engaged Datamaxx to modify the original specifications of Accident Report, and to prioritize delivery of same.

21.      As evidence of such renewed priority, Accident Report meetings were held between the NYPD and Datamaxx, and Datamaxx began to design and build the prototype for Accident Report at the special direction and request of the NYPD.

22.      In or around July of 2013, NYPD requested a Statement of Work from Datamaxx to accelerate the delivery of Accident Report to NYPD.

23.      Pursuant to such request, Datamaxx delivered a final Statement of Work ("SOW") and a price quote to NYPD.

24.      In response to the delivery of the Accident Report SOW and price quote, NYPD advised Datamaxx that funding for the Accident Report was imminent.

25.      In or around October of 2013, NYPD communicated to Datamaxx that the Accident Repost accelerated SOW would be funded through a New York State grant earmarked

for same.  NYPD further advised that the grant would expire in March of 2014 and as such, all billing and payment would need to be completed by said date.

26.     In reliance upon such representations, and in particular, the March 2014 grant expiration deadline, Datamaxx acted on an expedited time line.

27.     In or around December of 2013, Datamaxx conducted pricing justification with the NYPD Office of Management and Budget.

28.     In or around January of 2014, NYPD provided Datamaxx with a completed contract for execution and further, NYPD advised that it would process the contract for registration with the City of New York Office of the Comptroller.

29.     Despite the delay in processing the contract, NYPD agreed to the proposed billing milestones for Accident Report such that all billing could be completed by the March 2014 grant expiration deadline.

30.     In February of 2014, Datamaxx met with NYPD again to provide an overview of the Accident Report Prototype.

31.     Upon information and belief, in or around this time, the New York State Division of Motor Vehicles weighed in on the process and the proposed manuals that accompanied the Accident Report Prototype.

32.     Also in February of 2014, NYPD Fiscal Affairs requested an Insurance Accord for the contract covering Datamaxx's work on Accident Report and confirmed that once such Accord was received, the contract would be registered with the City of New York Office of the Comptroller.

33.    In March 2014, in keeping with the grant deadline, Datamaxx advised NYPD that it had completed the Accident Report project schedule and internal design document in accordance with the agreed project milestones.

34.    Thereafter, NYPD advised Datamaxx that newly appointed Deputy Commissioner Jessica Tisch had placed a freeze on all procurements, including Accident Report, until further notice.

35.    Despite several attempts to discuss the issue with Deputy Commissioner Tisch, Datamaxx was never granted an opportunity to meet with her.

36.    Further, in addition to the significant work undertaken on the Accident Report project, pursuant to contract, NYPD also commissioned Datamaxx to develop a test system for the NYPD message switching system and digital dispatch interface that Datamaxx had also created and implemented for NYPD.

37.    Indeed, the contract proposal for the message switching system and interface originally included a "test system" (the "Test System") component.  However, prior to the issuance of the actual contract, NYPD removed the Test System component from same.  Still, NYPD recognized the importance of the Test System component and as such, separately worked with Datamaxx to develop an SOW to present for budgetary approval for the Test System.

38.    With an eye toward same, in or around July of 2013, NYPD requested that Datamaxx provide pricing justification for the Test System.  Further, upon information and belief, NYPD and Datamaxx agreed to Test System creation milestones.

39.    Thereafter, in or around March of 2014, NYPD advised Datamaxx that the Test System SOW was accepted, that the Test System Contract was valued at $1,725,458.23 and that NYPD accepted the proposed milestone invoicing vis-a-vis same.

40.     In or around June of 2014, NYC launched an investigation into what is known as the ECTP project and advised that all new contracts were on hold until the investigation is completed.  Upon information and belief, this included the Test System Contract.

41.     Datamaxx had no involvement in the ECTP project.

42.     In or around September of 2014, NYPD leadership changed and Datamaxx was informed that Assistant Commissioner Steven Harte was not able to move forward with new initiatives, including the Test System Contract.

43.     As a result of same. Datamaxx was forced to lay off personnel assigned to the NYPD account for this purpose.

44.     On or around November 5, 2015, Datamaxx filed a Notice of Claim wherein Datamaxx alleged that at the direction of NYPD, Datamaxx provided services to NYPD, as more fully detailed above, and in connection with Accident Report and Test System, and that NYPD had not remitted payment for such services.

45.     On May 6, 2016, the City of New York Office of the Comptroller denied Datamaxx's claims.


## AS AND FOR A FIRST CAUSE OF ACTION

46.     Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" to "45" as if set forth more fully at length herein.

47.     NYPD, and in turn, NYC, failed to perform under the contract between Datamaxx and NYPD.

48.     Defendants actions constitute a breach of the contract between the parties.

49.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than $2,225,555.80.

## AS AND FOR A SECOND CAUSE OF ACTION

50.    Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" to "49" as if set forth more fully at length herein.

51.    New York law implies a covenant of good faith and fair dealing in all contracts between parties.

52.    Defendants breached the implied covenant of good faith and fair dealing as a result of the actions of Defendants as set forth hereinabove.

53.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than $2,225,555.80.

## AS AND FOR A THIRD CAUSE OF ACTION

54.    Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" to "53" as if set forth more fully at length herein.

55.    Defendants have been unjustly enriched as a result of the actions of the Defendants as set forth hereinabove.

56.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than $2,225,555.80.

## AS AND FOR A FOURTH CAUSE OF ACTION

57.    Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" to "56" as if set forth more fully at length herein.

58.    Datamaxx and NYPD agreed on milestone billing for the services rendered.

59.    Datamaxx provided NYPD with status updates and completion projections with regard to such billing.

60.    In response to such updates and projections, NYPD provided Datamaxx with funding assurances and never objected to such updates and projections.

61.    By reason of the foregoing, there exists an account stated by and between Plaintiff and Defendants, and as such, Plaintiff has been damaged in an amount to be determined at trial, but not less than $2,225,555.80.

## JURY DEMAND

62.    Plaintiff demands a trial by jury in this action.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Judgment be issued in favor of Plaintiff:

a.      On the First Cause of Action, judgment in favor of Plaintiff in an amount to be determined at trial, but not less than $2,225,555.80; and

b.      On the Second Cause of Action, judgment in favor of Plaintiff in an amount to be determined at trial, but not less than $2,225,555.80; and

c.      On the Third Cause of Action, judgment in favor of Plaintiff in an amount to be determined at trial, but not less than $2,225,555.80; and

d.      On the Fourth Cause of Action, judgment in favor of Plaintiff in an amount to be determined at trial, but not less than $2,225,555.80; and

e.      The costs, disbursements and fees associated with the prosecution of this action; and

f.      Such other and further relief as this Court deems just and proper.


                              **CRAWFORD · BRINGSLID · VANDER NEUT, LLP**

                  By:      /S/Allyn J. Crawford (AC2766)
                           Allyn J. Crawford, Esq.
                           Attorneys for Plaintiff
                           DATAMAXX APPLIED TECHNOLOGIES, INC.
                           900 South Avenue, Suite 204
                           Staten Island, New York 10314
                           (718) 273-9414
                           Our File #40879


Dated:       May 16, 2016